J-A27027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MAX FAUST | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BAYERISCHE MOTOREN WERKE AG AND BMW OF NORTH AMERICA, LLC A/K/A "BMW, NA' AND/OR "BMW" AND TAKATA CORPORATION AND TK HOLDINGS, INC AND N&H, LLC D/B/A HANNA MOTORS | |
| | No. 3468 EDA 2015 |

Appeal from the Order Entered October 15, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): November Term, 2014, No. 000656

BEFORE: PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

DISSENTING MEMORANDUM BY PANELLA, J.          **FILED MAY 24, 2017**

In reviewing cases where the trial court has received evidence and made findings of fact, we, as an appellate court, are not tasked with determining how we weigh the facts of record. Rather, our task is to review the trial court's finding to see if it is supported by the record. If so, we must accept it, even if we would have found differently. **See**, **e.g.**, **Richards v. Ameriprise Financial, Inc.**, 152 A.3d 1027, 1034 (Pa. Super. 2016).

Here, the trial court found that "BMW NA's primary business purpose is to sell or lease its vehicles to individual consumers," Trial Court Opinion,

_____

[*] Former Justice specially assigned to the Superior Court.

12/2/15, at 6. Furthermore, as the trial court notes, BMW NA cannot, as a matter of law, actually consummate any sales of BMW vehicles in the state of Pennsylvania, and most other states as well. *See id*., at nn. 8, 11. These findings are well supported by the record. My esteemed colleagues in the Majority disregard these findings. Accordingly, I respectfully dissent. A full discussion follows.

Jerry Matthews, Area Manager for BMW, NA, testified in his deposition that he is "responsible for a group of dealers with the purpose of helping them improve their … sales of cars, sales of service and parts." N.T., Deposition, 2/19/15, at 8. When asked to detail this responsibility, Matthews testified, "I work with the dealers on their marketing plans, I work with the dealers in communicating our sales support efforts. I work with the dealers on training issues … I work with the dealers on customer satisfaction issues." *Id*., at 15.

The one possible exception is BMW, NA's transactions with the independently owned dealerships it covers. BMW, NA generates a certain amount of revenue when it transfers a vehicle to a BMW dealership. *See id*., at 20, 103. The Majority seizes upon this portion of BMW, NA's functions and elevates it above all other evidence of record. I find this laser-like focus inappropriate.

Importantly, it is not clear from this record where else BMW, NA derives revenue, but according to Matthews, all the revenue from the

transfer of a vehicle to a dealership is then turned over to a local dealer group for marketing purposes, with BMW adding to the amount. *See id*., at 20-21.[1] Transfers of vehicles from BMW, NA to these dealers are described as "an extremely detailed allocation of cars process." *Id*., at 105. While this is certainly an activity that should not be classified as marketing, there is no evidence that allocating these vehicles to the dealerships is anything other than an incidental function that supports the primary goal of BMW, NA, which, as the trial court found, is to "sell or lease its vehicles to individual consumers."

It most certainly does not constitute "sales" in a traditional sense where a consumer is sold a requested number of goods at an agreed upon price. Rather, it is an internal mechanism whereby BMW, NA evaluates which dealerships to award vehicles to based upon their individual performances and overall market needs.

Thus, we are presented with a record that reveals a company whose primary, if not sole, business objective is solicitation. While the Majority may disagree with the trial court's factual finding on BMW, NA's primary business objective, it should not usurp the fact-finding function by substituting its judgment over the trial court's well-supported finding.

_____

[1] Although the parties have not explicitly requested it of this Court, Iam summarizing the testimony due to the parties' agreement that this testimony constitutes trade secrets and should be protected from dissemination to the public. *See id*., at 19-20.

I conclude that such an entity is not immune to venue under Rule 2179(a)(2). In such cases, marketing efforts are necessary to the entity's existence and therefore qualify as directly furthering the entity's business objective. This is especially true where, as here, the entity does not consummate any sales on its own, nor does it manufacture the goods it markets.

Our cases consistently emphasize that "each [venue] case rests on its own facts." *Purcell*, 579 A.2d at 246 (citation omitted). There are therefore no bright line rules other than the distinction between those actions that are necessary to the entity's business objective and those that are merely incidental.

Thus, I believe that a business entity, whose primary, if not sole, business objective is marketing, is not immune to venue under Rule 2179(a)(2). In such cases, marketing efforts are necessary to the entity's existence and therefore qualify as directly furthering the entity's business objective. This is especially true where, as here, the entity does not consummate any sales on its own, nor does it manufacture the goods it markets.

While I can sympathize with Appellee's argument that the most appropriate forum for this case is Lancaster County, that is not the standard that we must apply. Rather, we must give deference to the plaintiff's choice of forum, so long as venue is established under Rule 2179.

Furthermore, it is important to remember that the plaintiff does not bear the burden of proof on this issue; it is the objecting party's burden to establish that the plaintiff's choice does not satisfy Rule 2179. Any deficiency in the evidence is to the detriment of the objecting party, not *vice versa*.

Under these particular circumstances, I must conclude that the trial court abused its discretion in finding that BMW, NA had met its burden in establishing that the quality of its business contacts with Philadelphia County were insufficient to establish venue. However, I do not reach the second prong of the test, as the trial court has not yet rendered a finding on this issue.

Faust argues that it should be allowed to finish discovery on this issue and requests a remand for this purpose. Specifically, on August 10, 2015, the trial court ordered the parties to provide evidence on the issue of the quantity of BMW, NA's gross business revenue arising from sales of BMW vehicles to Philadelphia County residents. The trial court acknowledges that BMW, NA has failed to comply with this order. **See** Trial Court Opinion, 12/2/15, at 7, n. 9. However, it excuses this breach by concluding that the quality of BMW, NA's contacts were insufficient no matter the quantity.

I conclude that the gross business revenues of BMW, NA derived from Philadelphia County residents is irrelevant to the issue at hand. As noted, it is uncontested, for purposes of this appeal, that BMW, NA does not engage in sales of vehicles to the public. The record supports the conclusion that

BMW, NA has no direct control over the sales activities of dealerships, which are independent business entities.

The current record is unclear concerning where BMW, NA derives all of its income. Importantly, it is BMW, NA's burden to establish that the quantity of contacts is insufficient in order for its request for venue to be transferred to be granted. It is unclear whether BMW, NA derives any income directly from Philadelphia residents. Evidence may show that it does not. However, since the trial court found that BMW, NA's primary business purpose is to sell or lease BMW vehicles to individuals, this is not the only relevant factor. As I have noted, BMW, NA's primary business purpose based upon the record before us is marketing. Thus, a relevant consideration is the quantity of marketing contacts BMW, NA has with Philadelphia County.

However, I agree with BMW, NA that its actions in promoting national marketing campaigns that penetrate the Philadelphia market are not relevant contacts under this analysis. Rather, the analysis should focus on any marketing activities that are based in Philadelphia County. For example, procuring advertisements with Philadelphia County media outlets or direct mailers that BMW, NA may have sent to Philadelphia residents.

As I conclude that the trial court abused its discretion on the issue of quality of contacts, I would remand this case to the trial court for an examination of the quantity of BMW, NA's marketing contacts in Philadelphia County. Our standard of review requires deference to the trial court's

findings and conclusions. We cannot review a finding that the trial court has not yet made. I would therefore vacate and remand for further proceedings.